UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Shelly & Sands, Inc., *et al.*,**

    **Plaintiffs,**

v.

**Rick Dement, *et al.*,**

    **Defendants.**

Case No. 2:22-cv-4144

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

Defendants move to dismiss various claims in this case, Mot. Dismiss, ECF No. 39; Mot. Dismiss, ECF No. 53, and have counter-sued two Plaintiffs, Answer, ECF No. 43. Those Plaintiffs move to dismiss the counterclaims. Mot. Dismiss, ECF No. 46. For the following reasons, the Court orders briefing on the threshold issues of jurisdiction, mootness, and standing.

## I. FACTS

Before turning to the facts in this case, it is helpful to introduce the multitude of parties. There are twenty Plaintiffs: Shelly & Sands, Inc. ("Shelly & Sands"), S&S Terminal, Inc. ("S&S Terminal"), Steve Pearch ("S. Pearch"); Kimberly Pearch ("K. Pearch"); Denny Gorlock ("D. Gorlock"); Susan Gorlock ("S. Gorlock"); Todd Morelli ("Morelli"); Alex Russell ("Russell"), Jason Staskey ("Staskey"); Mike Smith ("Smith"); Sheila Cefus ("Cefus"); John Palcic ("J. Palcic"); Melissa Palcic ("M. Palcic"); Mike Kuester ("M. Kuester"); Ed Vahalik ("Vahalik"); Bob Kuester ("B. Kuester"); Bob Hedger ("B. Hedger"); Terri Hedger

("T. Hedger"); Darby Copeland ("Copeland"); and Bill Berisford ("Berisford", collectively with the other individuals, "Individual Plaintiffs").

Plaintiffs sue five defendants: Rick Dement ("Rick");[1] Rachelle Dement ("Rachelle", together with Rick, "the Dements"), Rayland Marina, LLC; Ohio River Marine, LLC; and the United States Army Corps of Engineers, Pittsburgh District ("Army Corps").

Plaintiffs allege the following facts in their Amended Complaint. The Dements entered into a lease with the Army Corps in 2007 that permitted the Dements to operate the Rayland Marina ("marina") for the sole purpose of public recreational use. Am. Compl. ¶ 1, ECF No. 33.

Shelly & Sands owns property along the Ohio River ("Rayland Terminal") that is adjacent to the property the Dements lease from the Army Corp. *Id.* ¶ 5. S&S Terminal is an Ohio corporation, but the Amended Complaint provides no other facts as to how S&S Terminal is connected to Shelly & Sands or the marina. *See id.* ¶ 6. Some of the Individual Plaintiffs rent space at the marina, but others apparently ceased renting space prior to joining this lawsuit. *E.g., id.* ¶¶ 7, 9.

The Dements have let the marina fall into disrepair, and, instead of operating the marina for public recreational use, the Dements use it to operate a fleet of commercial tugboats, ostensibly through Rayland Marina, LLC and Ohio

---

[1] The Court refers to Rick and Rachelle Dement by their first names because they both have the same first initial and last name.

River Marine, LLC. *Id.* ¶¶ 1, 26–27. The tugboats launch from unsightly—and unsafe—makeshift docks located on the banks of the marina. *Id.* The tugboats and the makeshift docks from which they launch interfere with the public's ability to navigate the Ohio River and create unsafe conditions for others using the marina. *Id.* ¶ 2. Moreover, said use violates the Dements' lease with the Army Corps.

Plaintiffs seek damages, to enjoin the Dements from continuing to operate the tugboat business out of the marina, for termination of the lease, and for declaratory relief. *See generally*, Am. Compl., ECF No. 33.

## II. JURISDICTION

As a threshold issue, the Court must consider whether it has subject-matter jurisdiction over each claim in this case.

Several Plaintiffs and Defendants are citizens of Ohio, and Plaintiffs seemingly assert state-law causes of action: private nuisance; public nuisance; interference with Plaintiffs' riparian rights; tortious interference with prospective business and contractual relationships; and breach of contract. *See generally*, Am. Compl., ECF No. 33. It thus does not appear that diversity jurisdiction exists in this case or that the case involves a federal question. Accordingly, neither 28 U.S.C. § 1331 nor § 1332 seem to confer subject-matter jurisdiction.

Additionally, although Plaintiffs seek a declaratory judgment, Am. Compl. ECF No. 33, "the Declaratory Judgment Act does not provide for its own federal

subject matter jurisdiction[.]" *New Hampshire Ins. Co. v. Home Sav. And Loan Co. of Youngstown, Ohio*, 581 F.3d 420, 423 (6th Cir. 2009).

Plaintiffs, however, assert 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 1333(1) as bases for this Court's subject-matter jurisdiction. *Id.* ¶¶ 29–30. The Court considers each.

Section 1346(b)(1) confers:

> exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

This is primarily a breach-of-contract and tort case in which Plaintiffs allege the Army Corps is sued "as a party . . . due solely to its interest in the property underlying this case." Am. Compl. ¶ 28, ECF No. 33. None of the allegations in the Amended Complaint accuse a government employee of committing a negligent or wrongful act or omission while acting within the scope of the employee's office or employment. Nor does the Amended Complaint allege injury or loss of property, personal injury, or death. As such, it is not immediately apparent how Section 1346(b)(1) confers federal subject-matter jurisdiction over Plaintiffs' claims against the Army Corps, let alone over Plaintiffs' claims against the Dement Defendants.

That leaves admiralty jurisdiction.[2] The United States Constitution decrees that "[t]he judicial Power shall extent to . . . all Cases of admiralty and maritime Jurisdiction[.]" U.S. Const. art. III, § 2, cl. 1. In the early 1800s, Justice Story, while sitting on Circuit, considered the breadth of that Constitutional jurisdictional grant. *DeLovio v. Boit*, 7 F. Cas. 418 (C.C. D. Mass, 1815). He chronicled the history of admiralty jurisdiction in England and elsewhere, as originally formed and subsequently (arguably) limited by statute. *See generally*, *id*. He then declared that, in the United States, the Constitutional delegation of admiralty jurisdiction broadly "comprehends all maritime contracts, torts, and injuries." *Id.* at 444. Whether torts and injuries fell within the Constitutional grant of admiralty jurisdiction was "necessarily bounded by locality[,]" but "all contracts, (wheresoever they may be made or executed, or whatsoever may be the form of the stipulations,) which relate to the navigation, business or commerce of the sea" fell within admiralty jurisdiction. *Id.* at 444. In other words, for purposes of the Constitutional grant of admiralty jurisdiction, jurisdiction over torts historically depended upon location, but admiralty jurisdiction over contracts depended upon the subject-matter of the contract.

Before this Court can exercise admiralty jurisdiction, Congress must delegate the Constitutional authority to the lower federal courts. The operative

---

[2] Admiralty claims do not invoke the Court's federal question jurisdiction under § 1331. *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 368 (1959), *superseded on other grounds by statute*.

delegation statute is 28 U.S.C. § 1333(1), which provides in pertinent part that "district courts shall have original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction[.]" The Court thus next explores the historical and current limitations on the statutory grant of admiralty jurisdiction.

Different tests have developed for determining whether a tort or contract dispute falls under the lower courts' admiralty jurisdiction, with the emphasis remaining on locality for torts and subject-matter for contracts.

## A. Torts

From the outset, whether admiralty tort jurisdiction existed focused on the location of the tort. By the late 1800s, admiralty jurisdiction existed over "every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters[,]" so long as the entire tort (the wrong and the injury) occurred on those high seas or navigable waters. *The Plymouth*, 3 Wall. 20, 35–36 (1866), *superseded by statute*, Extension of Admiralty Jurisdiction Act, 42 U.S.C. § 30101; *see also, e.g., Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531–32 (1995).

By the Extension of Admiralty Jurisdiction Act of 1948, 46 U.S.C. § 30101(a), Congress extended coverage, providing that admiralty tort jurisdiction existed anytime the damage or injury was caused by a vessel on navigable water, even if the damage occurred on land. *Grubart*, 513 U.S. at 532. The Extension of Admiralty Jurisdiction Act thus retained the historical pure locality test—in that the tort must have occurred on the high seas or navigable

waters—but extended jurisdiction where the damage or injury occurred on land. *Id.* ("The purpose of the Act was to end concern over the sometimes confusing line between land and water, by investing admiralty with jurisdiction over all cases where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land." (internal quotation marks and citations omitted)).

By the early 1970s, such a pure locality test for admiralty tort jurisdiction seemed unwise to many courts and scholars, and some lower courts began grafting an additional "maritime nexus" requirement for tort jurisdiction. *See Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 254–57 (1972). The Supreme Court adopted such a nexus requirement in *Executive Jet* for admiralty jurisdiction over aviation tort cases. *Id.* at 268 ("We hold that unless such a [significant] relationship [between the wrong and traditional maritime activity] exists, claims arising from airplane accidents are not cognizable in admiralty in the absence of legislation to the contrary."). It extended this nexus requirement to all maritime tort cases a decade later. *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982) ("We recognize . . . that the *Executive Jet* requirement that the wrong have a significant connection with traditional maritime activity is not limited to the aviation context.").

Although a "maritime nexus" is now required, the wrong need not itself have a commercial aspect in order to show a significant connection between it and traditional maritime activity. *Id.* ("We also agree that there is no requirement

that the maritime activity be an exclusively commercial one." (internal quotation marks and citation omitted)). Rather, if "a potential hazard to maritime commerce arises out of activity that bears a substantial relationship to traditional maritime activity, . . . admiralty jurisdiction is appropriate." *Id.* at 675 n.5.

Thus, for admiralty tort jurisdiction to lie, two tests must now be satisfied.

First, the locality test must still be met. *Grubart*, 513 U.S. at 534. "A court applying the loca[lity] test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* (citation omitted). The locality test implicates distinct sub-analyses of whether the tort occurred on "navigable waters"—which itself must be determined with a level of geographic particularity—as well as, perhaps, whether the tort was done by a "vessel" as defined in admiralty law. *E.g., Grubart*, 513 U.S. at 534–35.

Second, the connection-to-maritime-activity test must be met. This second test, itself, has two prongs. The tortious incident must have the potential to disrupt maritime commerce. *Sisson v. Ruby*, 497 U.S. 358, 362–63 (1990); *Grubart*, 513 U.S. at 534 ("A court . . . must assess the general features of the type of incident involved to determine whether the incident has a potentially disrupting impact on maritime commerce." (internal quotation marks and citation omitted)). The "incident" analyzed at this part of the connection to maritime activity test must be described "at an intermediate level of possible generality." *Grubart*, 513 U.S. at 538. For example, the "incident" in *Sisson* was not defined

broadly as "fire" or narrowly as "fire solely between two pleasure boats" but in the middle as "a fire on a vessel docked at a marina on navigable waters." *Sisson*, 497 U.S. at 363.

Moreover, the activity giving rise to the incident must itself bear a substantial relationship to traditional maritime activity. *Sisson*, 497 U.S. at 364; *Grubart*, 513 U.S. at 534. Just as the court defines at an intermediate level of generality the "incident" at issue in the first prong of the *Sisson* test, so too must it define generally the activity giving rise to the incident under the second *Sisson* prong. *Sisson v. Ruby*, 497 U.S. 358, 364 (1990) ("The relevant 'activity' [giving rise to the tort] is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose."). For example, the relevant activity could be defined as docking a vessel or operating a vessel upon navigable waters. "We ask whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Grubart*, 513 U.S. at 539–40; *see also Sisson*, 497 U.S. at 367 (docking, storing, and maintaining a vessel at a marina are activities that bear a significant relationship to traditional maritime activity); *Foremost*, 457 U.S. at 674 (negligent operation of a vessel on navigable waters is sufficiently connected to traditional maritime activity to confer admiralty jurisdiction); *Executive Jet*, 409 U.S. at 270–71 (flying an aircraft over water as

part of a flight from one spot on land to another spot on land is not sufficiently connected).

If both the locality and maritime connection requirements are met, admiralty tort jurisdiction exists. If not, admiralty tort jurisdiction is lacking.

## B. Contracts

Early on, the United States Supreme Court declared that admiralty jurisdiction "extends to all contracts, claims, and services essentially maritime[.]" *Ex parte Easton*, 95 U.S. 68, 72 (1877). The scope of admiralty jurisdiction over contract disputes has not evolved as much as it has for jurisdiction over admiralty torts, and the test remains focused on whether the subject-matter of the contract is "essentially maritime." *Id.*

"To ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute, as we would in a putative maritime tort case." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004) (citation omitted). "Nor can we simply look to the place of the contract's formation or performance. Instead, the answer depends upon . . . the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." *Id.* (internal quotation marks and citations omitted).

*Kirby's* reference to "maritime service" or "maritime transactions" focuses on "whether the principal objective of a contract is maritime commerce," because the overarching interest underpinning federal maritime jurisdiction is the

protection of maritime *commerce*. *Id.* at 25; *New Hampshire Ins. Co. v. Home Sav. And Loan Co. of Youngstown, Ohio*, 581 F.3d 420, 424 (6th Cir. 2009) ("[W]e must focus our inquiry on whether the *principal objective* of a contract is maritime *commerce*." (internal quotation marks and citation omitted) (emphasis in original)). In making such a determination, the Court must "consider the contract as a whole." *New Hampshire Ins. Co. v. Home Sav. And Loan Co. of Youngstown, Ohio*, 581 F.3d 420, 424 (6th Cir. 2009) (citing *Kirby*, 543 U.S. at 24–26).

Importantly, the Sixth Circuit has rejected the notion that admiralty contract jurisdiction exists where a parties' contract dispute merely implicates maritime concerns; instead, the principal objective of the contract must implicate commercial activity. *New Hampshire Ins. Co.*, 581 F.3d at 428 ("As *Kirby* makes clear, th[e] "broad perspective" [applicable for maritime tort jurisdiction purposes] is not applicable in the context of maritime contracts where the requisite injury is more focused, and where we must determine whether the contract implicates a *commercial* activity" (internal quotation marks and citation omitted)); *see also* § 3:10 Admiralty contract jurisdiction, 1 Admiralty & Mar. Law § 3:10 (6th ed.) ("As a general rule the subject matter of a maritime contract must be directly and intimately related to the operation of a vessel and navigation; it is not enough that the contract relates in some *preliminary* manner to maritime affairs. Contracts not directly related to maritime matters and ship navigation afford no justification for the application of the uniform admiralty law and are best left to decision under

state law contract principles."). Thus, the simple fact that a lease relates to a marina, for example, does not imply that it is necessarily a maritime contract. *New Hampshire Ins. Co. v. Home Sav. And Loan Co. of Youngstown, Ohio*, 581 F.3d 420, 424 (6th Cir. 2009) ("Simply because this insurance policy relates to boats and a marina does not necessarily imply that it is a 'maritime contract.'"). At bottom, a court must ask "whether the contract's purpose is to effectuate maritime commerce." *New Hampshire Ins. Co.*, 581 F.3d at 429 (cleaned up).

## III. ANALYSIS

Although the Amended Complaint contains many of the buzzwords and phrases related to admiralty jurisdiction, it does not fully explain how each claim falls under admiralty jurisdiction,[3] and it is unclear from initial review whether Plaintiffs have properly invoked the Court's admiralty jurisdiction for every claim.

First, Plaintiffs allege the purpose of the at-issue lease was to maintain the marina for recreational purposes and that commercial ventures were strictly prohibited by the lease. It is not immediately apparent whether this satisfies the commerce requirement necessary for admiralty contract jurisdiction.

Second, the Amended Complaint demands a jury trial, which is not available as a matter of right in an action brought under the Court's admiralty

---

[3] To be sure, Plaintiffs need only assert "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). But because admiralty jurisdiction is complicated, and because whether such jurisdiction truly exists is not immediately apparent from the Amended Complaint, the Court will benefit from additional briefing on the issue.

jurisdiction. *E.g.*, *Buccina v. Grimsby*, 889 F.3d 256, 261 (6th Cir 2018); *see also* Fed. R. Civ. P. 38(e); 9(h).

Third, Plaintiffs cite Ohio law as governing their tort and contract claims. *E.g.*, Resp. 6–7, ECF No. 44. However, when a federal court's admiralty jurisdiction is invoked, federal maritime substantive law applies to the claims. *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206 (1996) ("With admiralty jurisdiction, we have often said, comes the application of substantive admiralty law." (internal quotation marks and citation omitted)); *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22–23 (2004) ("When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 742 (1961)); *Buccina v. Grimsby*, 889 F.3d 256, 259 (6th Cir. 2018) ("Once a claim comes within our admiralty jurisdiction, substantive federal maritime law thus applies." (citations omitted)); *but see*, *Grubart*, 513 U.S. at 546 (noting that "federal admiralty courts sometimes do apply state law" (citations omitted)).

Before ruling on the various pending motions, the Court seeks assurance both that it has subject-matter jurisdiction over each claim raised in the Complaint and that the parties have briefed dismissal of the claims under the correct substantive law. To that end, the Court **ORDERS** Plaintiffs to brief, with citation to caselaw, precisely how each claim in this case falls under 28 U.S.C. § 1333(1) (or another jurisdictional basis). To the extent required, Plaintiff's brief should address such questions as, *inter alia*, whether: (1) the tort occurred at a precise

geographic location that qualifies as navigable waters for purposes of the location test or whether Plaintiffs' alleged injury on land is caused by an offending object that qualifies as a vessel under maritime law;[4] (2) how the "incident" and "activity giving rise to the incident" should be defined under *Sisson* and whether the requisite potential to disrupt maritime commerce/substantial connection to traditional maritime activity are present for tort jurisdiction; whether (3) the lease is a maritime contract for contract jurisdiction; and (4) whether federal maritime common law even recognizes the types of tort claims Plaintiff asserts. Additionally, Plaintiff's brief should explain, with citation, why Ohio substantive law governs liability on each claim.

Plaintiffs' brief should additionally address how the Individual Plaintiffs who no longer rent space at the marina have Article III standing in this case with respect to each claim and each type of relief.

Finally, Dement Defendants represent that they have permanently removed the tugboats and dock, Reply 3, ECF No. 57; Plaintiffs shall therefore brief why Plaintiffs' claims should not be dismissed as moot.

Plaintiffs' brief addressing the above issues is due within **THIRTY DAYS** of the date of this Order.

---

[4] Such an argument may require explaining whether the offending object is the makeshift docks or the tugboats (or both), as the result is not necessarily the same for both.

The Dement Defendants shall brief the issue of mootness within **TWENTY-ONE DAYS** of the date of service of Plaintiffs' brief. If Defendants wish to also respond to Plaintiffs' assertions regarding either jurisdiction, standing, or, for lack of a better phrase, choice of law, their responses shall be contained within the brief addressing mootness.

Plaintiffs shall not file a reply brief absent leave of Court.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**