UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Shelly & Sands, Inc., *et al.*,

    Plaintiffs,

v.

Rick Dement, *et al.*,

    Defendants.

Case No. 2:22-cv-4144

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

There are several pending motions before the Court:

- United States Army Corps of Engineers's ("USACE") motion to dismiss. ECF No. 39.

- S & S Terminal, Inc.'s and Shelly & Sands, Inc.'s (collectively, "S&S") motion to dismiss. ECF No. 46.

- Rachelle Dement's, Rick Dement's (collectively with Rachelle Dement, the "Dements"), Ohio River Marine LLC's, Rayland Marina LLC's (collectively with the Dements and Ohio River Marine, LLC, "Dement Defendants"), and USACE's (collectively with Dement Defendants, "Defendants") motion to dismiss. ECF No. 53.

For the following reason, USACE's motion is **GRANTED**; S&S's motion is **GRANTED IN PART** and **DENIED IN PART**; Defendants' motion is **GRANTED**.

### I.    FACTS

During the relevant times, USACE leased Rayland Marina (the "Marina"), a marina on the Ohio River, to the Dements. Am. Compl. ¶¶ 34–36, ECF No. 33. The lease (the "Contract") provides that the Dements may operate the Marina for

only public recreational purposes. *Id.* ¶ 37; *see also* Contract ¶ 5.a., ECF No. 33. Plaintiffs allege that, in violation of the Contract, the Dements have used the Marina to conduct commercial business and "have done so in an unsafe and unlawful manner." Am. Compl. ¶ 53, ECF No. 33. Based on these allegations, Plaintiffs assert several claims against Defendants, including claims for public and private nuisance and breach of contract. *See generally, id.*

Dement Defendants assert two counterclaims against S&S. Counterclaim, ECF No. 43. According to Dement Defendants, S&S, which operates property next to the Marina, has received commercial deliveries that block the entrance to the Marina. *Id.* ¶¶ 3–10. Dement Defendants also allege that S&S has interfered with Dement Defendants' relationships with USACE and Dement Defendants' customers. *Id.* ¶¶ 16–30. Based on these allegations, Dement Defendants assert counterclaims for interference with access to and quiet enjoyment of riparian rights and tortious interference with business relationships. *See generally, id.*

## II. STANDARD OF REVIEW

A claim survives a motion to dismiss[1] under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[1] Although titled a motion to dismiss, because Dement Defendants have filed an Answer, their part of Defendants' motion is more properly construed as a motion for judgment on the pleadings. In this case, the distinction makes little difference because a motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Twombly*, 550 U.S. at 556. A pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the [pleading] are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). At the motion-to-dismiss stage, a district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wamer*, 27 F.4th 461, 466 (6th Cir. 2022) (internal quotation marks and citations omitted). However, the non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III.  ANALYSIS

Defendants move to dismiss two of Plaintiffs' claims, and S&S moves to dismiss Defendants' counterclaims. ECF Nos. 39, 46, & 53. The Court first addresses some preliminary matters and then considers each motion.

## A. Preliminary Matters

### 1. Oral Argument

Plaintiffs request oral argument on, at least, the jurisdictional issues. That request is **DENIED**. The Court can assess the issues the parties raised in their briefs without the assistance of oral argument.

### 2. Jurisdiction

In its prior Opinion and Order, the Court thoroughly outlined the test for admiralty jurisdiction and directed the parties to brief whether such jurisdiction exists here. Upon review of the parties' briefs, the Court concludes that it has admiralty jurisdiction over at least some of Plaintiffs' claims. *See, e.g.*, *International Marine and Indus. Applicators, Inc. v. Avondale Indus., Inc.*, 1994 WL 71287, at *1 (E.D. La., 1994) ("Tortious interference with a contract is a cause of action under the federal maritime law." (citations omitted)). Because the Court has admiralty jurisdiction over some of Plaintiffs' claims, it may exercise supplemental jurisdiction over the other claims. 28 U.S.C. § 1367.

### 3. Mootness and Standing for Prospective Relief

Plaintiffs seek, among other things, prospective injunctive relief. *See generally*, Am. Compl., ECF No. 33. The Dements have represented that they have fixed the alleged problems with the Marina. ECF No. 57. Based on the Dements' representation, the Court expressed concern that Plaintiffs' requests for injunctive relief could be moot or that Plaintiffs who no longer use the Marina might lack standing to pursue the same, and the Court ordered further briefing.

Opinion & Order, ECF No. 64. The parties briefed the issues. ECF Nos. 66, 67, & 68.

Upon review of the supplemental briefing, the Court concludes that Plaintiffs' *claims* are not moot because Plaintiffs also seek money damages, which are retrospective. Because the claims themselves are not moot, and because discovery has not yet revealed how many of the alleged problems the Dements have fixed, the Court will determine what remedies Plaintiffs may pursue if either the Court or a jury finds Defendants liable on any of Plaintiffs' claims.[2]

### 4. USACE

USACE moves to dismiss Plaintiffs' claims against it for a variety of reasons. ECF No. 39. That motion is granted because USACE is not properly a defendant in this case. Plaintiffs do not allege any wrongdoing by USACE. Indeed, Plaintiffs specifically allege that they included USACE only because of "its interest in the property underlying this case." Am. Compl. ¶ 28, ECF No. 33. The few mentions of USACE throughout the Complaint are only reminders that USACE owns the land. *E.g.*, *id.* ¶ 111. Thus, because Plaintiffs do not assert claims against USACE, it is not a defendant.

True, Plaintiffs frame their claims against USACE quite differently in their response and, therein, allege that USACE is liable for nuisance claims because it

---

[2] Similarly, the Court will decide whether Plaintiffs have a right to a jury trial if this case is ever in a trial posture.

owned the land and failed to abate the alleged nuisance and because USACE maintained control of the Marina. Resp., ECF No. 44. This re-framing is unavailing.

First, a plaintiff cannot amend a complaint via its response to a motion to dismiss. *See Carte v. American Electric Power Service Corp.*, 2022 WL 3447315, at *9 (S.D. Ohio, 2022) ("[A]llegations in a response brief are not properly before the Court and, therefore, are not considered." (citing cases)). Thus, the Court ignores any new allegations Plaintiffs added (or embellished) in their response. Second, to the extent Plaintiffs argue that a few words sprinkled throughout the Amended Complaint support Plaintiffs' new claims and new arguments, the Court disagrees. Especially when combined with Plaintiffs' express statement that it included USACE only because of its interest in the land, the Complaint does not give USACE fair notice of any claims against it.

In sum, to the extent any claims are directed at USACE, those claims are dismissed without prejudice. If USACE wishes to remain in this action because of its interest in the land, it may move to appear as an interested party.

**B.  Plaintiffs' Claims**

Plaintiffs bring several claims against Defendants. *See generally*, Am. Compl., ECF No. 33. Defendants move to dismiss only the breach-of-contract claim and Plaintiffs' bid for declaratory relief. ECF No. 53. The Court considers each claim, in turn.

### 1. Breach of Contract

Plaintiffs assert a breach-of-contract claim based on the Contract. Am. Compl. ¶¶ 133–44, ECF No. 33. Before addressing the merits of that claim, the Court must first determine what law governs.

#### a. What law applies?

The first issue is whether Plaintiffs' contract claim is governed by maritime or Ohio law. For the reasons explained below, the Contract is not a maritime contract, and, thus, the contract claim is governed by Ohio law.

The Sixth Circuit has explained that there is a "distinction between contracts related to the operation of a particular vessel involved in a commercial transaction and those related to fixed structures." *New Hampshire Ins. Co. v. Home Sav. & Loan Co. of Youngstown, Ohio*, 581 F.3d 420, 430 (6th Cir. 2009). The former type of contract is a maritime contract (and, therefore, is governed by maritime law); the latter is a realty contract (and, therefore, governed by the relevant state law). *Id.*

Here, the Contract is for the operation of the Marina. Contract, ECF No. 33. Although the Marina, and how it is operated, may impact vessels and the Ohio River, the Marina is itself a fixed structure. Thus, the Contract is one "related to [a] fixed structure[]" and, accordingly, the Contract is not a maritime contract. As a result, Ohio law governs this claim.

### b. Analysis

Plaintiffs' breach of contract claim is based on the theory that they are intended third-party beneficiaries of the Contract. If the Contract were between Defendants and some non-Government entity, Plaintiffs may have plausibly alleged that they were third-party beneficiaries. However, under Ohio law, private citizens—even if third-party beneficiaries—do not have "the right to enforce government contracts on their own behalf, unless a different intention is 'clearly manifested' in the contract." *Walker v. Jefferson Cty.*, No. 02JE14, 2003 WL 21505472, at *7 (Ohio Ct. App. June 25, 2003) (citations omitted). That is, the government contract must specifically give third parties the right to sue to enforce the contract. *Duncan v. Cuyahoga Cmty. Coll.*, 29 N.E.3d 289, 297–98 (Ohio Ct. App. Feb. 26, 2015). In other words, Ohio assumes that third-party beneficiaries of government contracts are incidental, not intended, beneficiaries, unless the language of the contract clearly states otherwise. *State ex rel. Atty Gen. v. Mastergard*, 60 N.E.3d 540, 546–47 (Ohio Ct. App. Feb. 23, 2016) (citing cases). For example, Ohio courts have held that a police department employee could not sue based on an alleged breach of a contract between the police department and an officer training program, *Duncan*, 29 N.E.3d at 296–98, and that a student loan debtor could not sue on a service agreement between the federal Department of Education and a student loan servicer, *Santagate v. Penn. Higher Educ. Assistance Agency*, No. 19AP-705, 2020 WL 2850264, at **5–6 (Ohio Ct. App. June 2, 2020).

Here, Plaintiffs point to no language in the Contract that clearly manifests an intention that Plaintiffs or similarly situated third-party beneficiaries would have the right to sue to enforce the Contract. In the absence of any such language, Plaintiffs' breach-of-contract claim cannot proceed. True, Plaintiffs point to some language showing that USACE and the Dements expected that Plaintiffs, and the public in general, would benefit from the Contract, and language that shows Plaintiffs were not specifically excluded from benefitting under the Contract. *E.g.*, Resp. 9, ECF No. 44; Resp. 9, ECF No. 56. That type of language is not enough, however; Plaintiffs need to point to language that shows they *have the right to sue* to enforce the Contract. See *Mastergard*, 60 N.E.3d at 546–47. Plaintiffs have not done so.

Accordingly, Plaintiffs' breach-of-contract claim is **DISMISSED WITHOUT PREJUDICE**. Although the language cited by Plaintiffs does not suffice, the Court has not combed the entire Contract. Thus, if other language in the Contract gives Plaintiffs the right to sue as third-party beneficiaries, they may move to amend the Amended Complaint to reassert this claim.

### 2. Declaratory Judgment

Plaintiffs assert a "claim" for declaratory judgment ("Claim VI"). Am. Compl. ¶¶ 145–55, ECF No. 33. Therein, Plaintiffs seek a declaration that Defendants breached the Contract. *Id.* ¶ 88. Upon review of the Amended Complaint, the Court concludes that Claim VI is entirely duplicative of Plaintiffs' other claims. Accordingly, Claim VI is **DISMISSED WITH PREJUDICE** as

duplicative. *See Borden v. Antonelli Coll.*, 304 F. Supp. 3d 678, 691 (S.D. Ohio 2018) ("Courts have authority to dismiss duplicative claims sua sponte" (citation omitted)).

## C. Defendants' Claims

Defendants assert counterclaims against S&S for interference with access to and quiet enjoyment of riparian rights ("riparian rights claim") and tortious interference with business relationships ("tortious interference claim"). *See generally*, Counterclaim, ECF No. 43. S&S moves to dismiss both counterclaims. ECF No. 46.

### 1. Riparian Rights Claim

If a riparian proprietor makes "an unreasonable use of the water of a watercourse or lake that causes harm to another riparian proprietor's reasonable use of water or his land," that person may be subject to liability for the tort of interference with riparian rights. Restatement (Second) of Torts § 850 (1979). However, as with any tort, especially those related to property rights like trespass, consent is an absolute defense. *E.g.*, *Dickinson v. Charter Oaks Tree & Landscaping Co., Inc.*, No. 02AP-981, 2003 WL 1924638, at *6 (Ohio Ct. App., Apr. 24, 2003) ("Defendants are not liable for trespass or destruction of vegetation if they were privileged, by receiving the consent of [the plaintiff] or her agent, to enter onto the [plaintiff's] property[.]"); Restatement (Second) of Torts § 892A ("One who effectively consents to conduct of another intended to invade

his interests cannot recover in an action for tort for the conduct or for harm resulting from it.").

Dement Defendants' riparian rights claim fails because they consented to the alleged interference. The interference Defendants complain of is Plaintiffs' delivery boats obstructing Dement Defendants' property and access to the Ohio River. Counterclaim ¶¶ 1–15, ECF No. 43. However, in their Answer, Dement Defendants admit that they allowed those delivery boats to be there. Ans. ¶ 83, ECF No. 43. Therefore, because Dement Defendants consented to the intrusion, they cannot pursue a cause of action based on the same. *Cf. Acacia on the Green Condo. Assoc., Inc. v. Gottlieb*, No. 92145, 2009 WL 2964373, at *9–10 (Ohio Ct. App., Sept. 17, 2009) (affirming the dismissal of a trespass claim because the alleged trespasser entered with the consent of the occupant).

Accordingly, Dement Defendants' existing riparian rights claim is **DISMISSED WITH PREJUDICE**.

### 2. Tortious Interference Claim

To establish a claim for tortious interference with contract and a business relationship ("tortious interference") under Ohio law[3], Defendants must show: (1) "a business relationship"; (2) "the tortfeasor's knowledge thereof"; (3) "an intentional interference causing a breach or termination of the relationship"; and

---

[3] The parties brief this claim using Ohio law. *See* Mot., ECF No. 46; Resp., ECF No. 48. Because this claim focuses on the Contract and Dement Defendants' business relationships with those who want to use the Marina—a fixed structure—the Court agrees that Ohio law applies to this claim.

(4) "damages". *Casale v. Nationwide Child.'s Hosp.*, No. 2:11-cv-1124, 2012 WL 13024407, at *3 (S.D. Ohio Aug. 2, 2012) (citing Ohio law). "It is an essential element in an action for tortious interference that the alleged interference bear a causal relationship to the breach or nonperformance of the business relationship." *Id.* at *4 (quotation marks omitted; citing Ohio law).

As it applies to Dement Defendants' relationships with USACE and any current or future customers, Dement Defendants' tortious interference claim fails. As to USACE and any current or future customers, Dement Defendants allege only that their relationships with those entities as "strained." *E.g.*, Counterclaim ¶¶ 25–26, ECF No. 43. "Strained" relationships cannot be the basis of a tortious interference claim. *See Slye v. Central States Southeast and Sw. Areas Health and Welfare Fund*, Nos. C2-95-1245 & C2-96-163, 1997 WL 675575, at *3–4 (S.D.Ohio,1997) (dismissing a tortious interference claim when the plaintiff alleged the relevant business relationships were "strained" because of the defendant's actions but there was "no allegation of breach, nor any allegation of a suspension of performance or a refusal to renew a contract"). Therefore, as to the relationships with USACE and current or former customers, the tortious interference claim is **DISMISSED WITHOUT PREJUDICE**.

In contrast, Dement Defendants' allegations imply that at least some of their past customers (the "Former Customers") ended their relationships with Dement Defendants because of S&S's interactions with Former Customers. As to the other elements of a tortious interference claim, Dement Defendants also

allege that they had business relationships with Former Customers, that S&S knew of those relationships, and that Dement Defendants have been damaged by the termination of the relationships. Counterclaim ¶¶ 18–19, 29, ECF No. 43. Thus, Dement Defendants have plausibly alleged a claim for tortious interference as to their relationships with Former Customers.

S&S disagrees, arguing that any communications it had with Former Customers were in preparation for this lawsuit and are thus privileged and cannot be the basis of tortious interference claim. *E.g.*, ECF No. 46. Even assuming that is a correct statement of law, it does not help S&S at this stage. Nothing in the Amended Counterclaim suggests that the only communications on which Dement Defendants base their tortious interference claim were about this lawsuit. *See generally*, Counterclaim, ECF No. 43. The Court must accept the Counterclaim's allegations as true at this stage and may not accept Plaintiffs' differing version of the facts. If discovery reveals that the at-issue statements were related to only this lawsuit, S&S may make their privilege arguments again at the summary judgment stage.

## IV. CONCLUSION

For these reasons, USACE's motion is **GRANTED**; S&S's motion is **GRANTED IN PART** and **DENIED IN PART**; Defendants' motion is **GRANTED**. The Court encourages the parties to consider mediation and will make chambers staff available to conduct a mediation. The parties are **ORDERED** to file a notice **WITHIN SEVEN DAYS** informing the Court whether they would like to pursue

mediation, with either chambers staff or at their own expense with a private mediator.

The Clerk shall terminate ECF Nos. 39, 46, and 53 and shall terminate USACE as a defendant.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**